Eastern District of Kentucky
F I L E D
MAR - 1 2016
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 15-96-HRW

DIVERSICARE LEASING CORP. D/B/A
BOYD NURSING & REHABILITATION CENTER;
OMEGA HEALTHCARE INVESTORS, INC.;
DIVERSICARE HEALTHCARE SERVICES, INC.
F/K/A ADVOCAT, INC.; and DIVERSICARE
MANAGEMENT SERVICES COMPANY,                        PLAINTIFFS,

v.                  **MEMORANDUM OPINION AND ORDER**

FERN WORKMAN
and
EUGENE WORKMAN,                                      DEFENDANTS.

This matter is before the Court upon Defendants' Motion to Dismiss [Docket No. 6] and Plaintiffs' Motion to Enforce Arbitration Agreement and Enjoin Defendants [Docket No. 8]. The motions have been fully briefed. For the motions set forth herein, this Court will overrule Defendants' motion and sustain that of Plaintiffs.

**I.**

This case arises from Defendant Fern Workman's residency at the Boyd Nursing & Rehabilitation Center in Ashland, Kentucky from early January 2014 until November of the same year. As part of the admissions process, she executed certain documents, including an Arbitration Agreement, a copy of which is attached to Docket No. 8 as Exhibit 2. The agreement provides, in pertinent part:

> [A]ny legal dispute, controversy, demand, or claim that arises out of or relates to the Resident Admission Agreement or is in any way connected to the Resident's stay at the Facility shall be resolved exclusively by binding Arbitration and not by a lawsuit or resort to other court process . . . . This agreement to arbitrate shall include, but is not limited to, any claim for payment, non-payment, or refund for services rendered to the Resident by the Facility, claims arising out of State or Federal law, claims based upon breach of contract, breach of fiduciary duty, violation of rights, fraud or misrepresentation, common law or statutory negligence, gross negligence, malpractice or any other claim based on any departure from accepted standards of medical or nursing care, whether such claims be for statutory, compensatory, or punitive damages, and whether arising in the future or presently existing.

[Docket No. 8-2, p.1-2].

The Arbitration Agreement conspicuously states, ""this Agreement is in no way a precondition to admission to the Facility or to receiving medical treatment, and no services or treatment shall be denied to you if you decline to sign this agreement." *Id*. at p. 1. The Agreement further states, "[b]**y agreeing to arbitration, both parties to this Agreement are waving the right to a trial before a judge or jury.**" *Id.* (emphasis in original). The parties to the Agreement further emphasized:

> **[W]e have read this entire Agreement and we understand and agree that by entering into this Arbitration Agreement we are giving up and waiving our Constitutional rights to have any claim or dispute that falls within the scope of this agreement decided in a court of law before a judge and jury.**

*Id*. at p. 5 (emphasis in original).

2

The Arbitration Agreement states, among other things, that Fern Workman had an opportunity to review the Agreement, had an opportunity to receive explanations or clarifications of any term of the Agreement, and had the right to consult with an attorney regarding the Agreement. *Id*. at 4. The Arbitration Agreement further states that Fern Workman could rescind the Agreement by providing written notice to the facility within thirty (30) days. *Id*. Fern Workman did not provide such notice after she signed the Arbitration Agreement. Thus, the Agreement remains in full force and effect.

The Arbitration Agreement specifically binds the Resident and the Resident's Authorized Representative as well as the following:

> the Facility's parents, agents, employees, servants, officers, directors, shareholders, medical directors, attorneys, insurers, or affiliated business entities, and any and all persons whose claim is derived from or on behalf of the Resident, including his or her agents, guardian, power of attorney, parent, spouse, child, executor, administrator, legal representative, heirs, trustees, or insurers.

*Id*. at p. 2.

In August 2015, Defendant Fern Workman and her husband, Defendant Eugene Workman, filed a civil lawsuit in the Circuit Court of Boyd County, Kentucky, alleging negligence, medical negligence, corporate negligence, violation of long term care resident's rights, and loss of spousal consortium, against Diversicare Leasing Corp. d/b/a Boyd Nursing & Rehabilitation Center; Omega Healthcare Investors, Inc.; Diversicare Healthcare Services, Inc.; Diversicare Management Services Company; and Cindy Salyers, in her capacity as Administrator of Boyd Nursing & Rehabilitation Center.   In their Answer in the state couyrt action, Defendants asserted that the Workman's claims are subject to a binding Arbitration Agreement.

Subsequently, the state court Defendants filed the instant lawsuit, as Plaintiffs, against the Workmans, alleging federal subject matter jurisdiction by virtue of diversity and seeking substantially the same relief from this Court regarding arbitration as they had demanded in State court; namely, to find the ADR Agreement to be valid and enforceable; to compel Defendants to arbitrate the State Court claims; and to enter an order enjoining Defendants from pursuing their claims in the State Court Action.

Defendants seek a dismissal of the this lawsuit. They contend that this Court lacks subject-matter jurisdiction; that it should abstain from hearing this action in light of the pending state-court matter; that the arbitration agreement at issue is invalid and unenforceable; and that the Court should not exercise its power to enjoin him from continuing the prosecution of his state-court action.

Plaintiffs seek entry of an Order compelling Defendants to proceed to arbitration and, in addition, enjoining him from pursing his claims in state court.

## II.

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6), is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief. *See Mayer v. Mylod,* 988 F.2d 635,638 (6'" Cir. 1993). This requires a consideration of and a ruling upon the merits of a claim. In determining whether dismissal is warranted under Rule 12(b)( 6), the complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *Miller v. Currie,* 50 F.3d 373,377 (6'" Cir. 1995). If, in doing so, the Court determines that the case is legally insufficient, it will be dismissed.

The procedure under a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P 12(b)(l) is quite different. At issue in a Rule 12(b)(l) motion is the trial court's

jurisdiction-its very power to hear the case. In this context, the trial court may proceed as it never could under 12(b)(6)- no presumptive truthfulness attaches to either party's allegations and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the party claiming jurisdiction will have the burden of proof that jurisdiction does in fact exist. *RMI Titanium Co. v. Westinghouse Electric Corp.,* 78 F.3d 1125, 1134 (6'" Cor. 1996)(internal citations omitted).

### III.

**A. Subject matter jurisdiction exists.**

"The requirement that jurisdiction be established as a threshold matter 'spring[ s] from the nature and limits of the judicial power of the United States' and is inflexible and without exception."' *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379,382,4 S.Ct. 510, 28 L.Ed. 462 (1884). Federal courts are courts of limited jurisdiction, and subject matter jurisdiction may be obtained only with the existence of diverse parties or a federal question. *Heartwood, Inc. v. Agpaoa,* 628 F.3d 261,266 (6th Cir.2010); 28 U.S.C. §§ 1331, 1332.

Neither party asserts the existence of a federal question. Rather, the disputed question is that of diversity. 28 U.S.C. § 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States."

Defendants have not challenged the allegations in Plaintiffs' Complaint concerning the citizenship of the named Plaintiffs in this action. Indeed, Defendants have already pled in the appurtenant state court action that each of the named Plaintiffs in this action are citizens of another state. Neither have Defendants challenged that the amount in controversy fails to meet the jurisdictional requirements of 28 U.S.C. § 1332. Rather, they contend that complete diversity of

citizenship among the parties cannot be established because Cindy Salyers the nursing home administrator named in the state complaint, a Kentucky citizen who was not named as a plaintiff in this action, is an indispensable party under Fed.R.Civ.P. 19 and, further, that her joinder would destroy the complete diversity among parties required by 28 U.S. C. 1332(a)(l).

Yet, this Court and other courts within this District have consistently held that the nursing home administrators are not indispensable per Rule 19. *GGNSC Vanceburg, LLC v. Hanley*, 2014 WL 1333204 (E.D.Ky. 2014). *See also, Brookdale Senior Living Inc. v. Stacy*, 27 F.Supp.3d 776 (E.D. Ky. 2014); *Sun Healthcare Group, Inc. v. Dowdy*, 2014 WL 790916 (W.D. Ky. 2014); *and GGNSC Louisville Hill creek, LLC v. Warner*, 2013 WL 6796241 (W.D.Ky, 2013).

As the undersigned explained in *Hanley*, Rule 19 deals with what were historically known as "necessary" and "indispensable" parties. The terms "necessary" and "indispensable" are terms of art in jurisprudence concerning Rule 19, and "necessary" refers to a party who should be joined if feasible, while "indispensable" refers to a party whose participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed. If a necessary party cannot be joined without divesting the court of subject-matter jurisdiction, the Rule Provides additional criteria for determining whether that party is indispensable, but if the court finds that the party is anything less than indispensable, the case proceeds without that party, and if, on the other hand, the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case.

The first step in determining whether Ms. Salyers is indispensable is to determine whether they are necessary. A party is deemed necessary under the Rule if:

6

>   (A) in that person's absence, complete relief cannot be accorded among those already parties; or
>   (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>   (I) as a practical matter, impair or impede the person's ability to protect the interest; or
>   (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19.

Defendants' claims against Ms. Salyers and the Plaintiffs in this case are based on the same occurrence, to-wit, the alleged negligence that resulted in injury to Fern Workman. Further, the arbitration agreement governs claims against the corporate parties as well as the administrators. Moreover, if this Court and the state court were to reach different conclusions regarding whether the arbitration agreement is enforceable, Ms. Salyers would face inconsistent procedural remedies. Accordingly, the Court concludes that the administrators are necessary party to the action.

However, that is not the end of the inquiry as it pertains to the existence of subject matter jurisdiction in this case. As the joinder of Ms. Salyers would destroy diversity jurisdiction, the Court must determine whether they are indispensable. To do so, this Court must balance the following factors: (l) the extent to which a judgment rendered in her absence might prejudice them or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in their absence would be adequate; and ( 4) whether Golden Gate However, that is not the end of the inquiry as it pertains to the existence of subject matter jurisdiction in this case. As the joinder of Ms. Bentley and Ms. Dingess would destroy diversity

jurisdiction, the Court must determine whether they are indispensable. To do so, this Court must balance the following factors: (l) the extent to which a judgment rendered in their absence might prejudice them or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in their absence would be adequate; and ( 4) whether Plaintiffs would have an adequate remedy if the action were dismissed for non-joinder. Fed.R.Civ.P. 19(b).

Defendants argue that they will not be afforded complete relief in the absence of Ms. Salyers being made a Plaintiff in this action. They claim undue and unnecessary prejudice by either a grant of jurisdiction by this Court or by being subjected to arbitration with only the named Plaintiffs, and that such a result would result in duplication of proceedings. The Court will address each of these arguments in turn.

First, the duplication of proceedings in these circumstances is not a disqualifying factor. The Sixth Circuit has rejected of this line of argument in a factually similar case addressing joinder: "[T] he possibility of having to proceed simultaneously in both state and federal court," or in two separate arbitrations for that matter, "is a direct result of [Defendants] decision to file a suit naming [Plaintiffs and Ms. Salyers] in state court rather than to demand arbitration under the [arbitration agreement]." *Paine Webber, Inc. v. Cohen,* 276 F.3d 197, 202 (2001). Moreover, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id.* The Court considers that there is low risk that the state court will reach an inconsistent outcome regarding the subject arbitration agreement as it relates to any party. Even assuming such risk, however, this is not the degree of prejudice required to conclude an absent party is indispensable. *Id* at 203. Determining whether the dispute as it relates to the nursing care facility is subject to arbitration is a simple matter of contract interpretation and does not require Ms. Salyers's

8

presence or input. *Id.* The prejudice Defendants fear does not present the degree of prejudice necessary to support a conclusion that the administrators are an indispensable party. Furthermore, "[w]here the risk of prejudice is minimal, the Court need not consider how protective provisions in the judgment, the shaping of relief, or other measures might reduce the risk of prejudice." *Id.* at 205.

With regard to the adequacy of available relief, Defendants make much of the administrator's status as a joint tortfeasor. They imply that this is dispositive of the Rule 19(b) inquiry. The United States Supreme Court has explicitly rejected this theory as a non sequitur. *Temple v. Synthes Corp., LTD.,* 498 U.S. 5, 8, Ill S.Ct. 315, 112 L.Ed.2d 263 (1990) (holding that a party's status as a joint tortfeasor does not make them a necessary or indispensable party but simply a permissive party to an action against one of them).

Finally, Defendants argue that an adequate remedy exists in state court if this Court were to dismiss the case. While that may be true, on balance, the factors do not dictate that the Court find Ms. Salyers to be an indispensable party. As such, the failure to join her does not warrant dismissal.

Defendants suggest that the Supreme Court's rationale in *Vaden v. Discover Bank,* 556 U.S. 49, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009), tips the scales in his favor with regard to jurisdiction, or, more precisely, the lack thereof. In *Vaden,* Discover Bank sued a credit card holder in state court to recover past-due charges. The credit card holder filed a counterclaim, also asserting state-law claims. But Discover Bank believed these claims were preempted by federal law, and filed an action in federal district court to compel arbitration of the counterclaims. The Supreme Court held that the district court lacked jurisdiction because the federal issue arose within the context of the state-court counterclaim, and federal courts cannot consider counterclaims when assessing federal question jurisdiction. Accordingly, the Supreme Court directed district courts to "look through" the arbitration action and determine whether federal

question jurisdiction exists based on the underlying state-court suit. *Id.* at 62. Defendant maintains that the logic of *Vaden* applies with equal force in cases resting on diversity jurisdiction. He argues that the Court should "look through" the instant action and determine whether it would have jurisdiction over the state suit, which includes the non-diverse nursing home administrators. However, this argument was explicitly rejected by United States Chief District Judge Karen Caldwell in *Brookdale*. She noted that the Supreme Court did not include diversity jurisdiction in its holding, despite acknowledging that diversity jurisdiction exists as a separate method for bring a claim pursuant to the Federal Arbitration Act. *Brookdale*, 27 F.Supp.3d at 782. Accordingly, this Court will decline to "look through" the present action to determine whether it would have diversity over the state-law suit.

Therefore, this Court finds the requirements of diversity jurisdiction have been met and this Court has proper subject matter jurisdiction over this case.

**B. Abstention is not warranted.**

Defendants, alternatively, argue that even if this Court has subject matter jurisdiction, it should abstain from hearing the merits of the case on the basis that there is a parallel suit pending in state court. This district has unequivocally dismissed this argument. *GGNSC Vanceburg, LLC v. Hanley*, 2014 WL 1333204 (E.D.Ky. 2014). *See also, Brookdale Senior Living Inc. v. Stacy,* 27 F.Supp.3d 776 (E.D. Ky. 2014); *Sun Healthcare Group, Inc. v. Dowdy*, 2014 WL 790916 (W.D. Ky. 2014); *and GGNSC Louisville Hillcreek, LLC v. Warner*, 2013 WL 6796241 (W.D.Ky. 2013).

Even where federal courts properly have jurisdiction over the matter, a district court may abstain from exercising its jurisdiction and refrain from hearing a case in limited circumstances, *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 625 (6th Cir.2009). This exception is

narrow because a district court presented with a case that arises under its original jurisdiction has a "virtually unflagging obligation" to exercise the jurisdiction conferred upon it by the coordinate branches of govenm1ent and duly invoked by litigants. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Abstention is an "extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Id.* at 813.

Under *Colorado River,* the threshold issue is whether there are parallel proceedings in state court. *Crawley v. Hamilton County Comm'rs,* 744 F.2d 28, 31 (6th Cir.1984). This is not in dispute. Once a court has determined there are parallel proceedings, the Supreme Court identified eight factors that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of state court. *Paine Webber, Inc. v. Cohen,* 276 F.3d 197, 206 (6th Cir.2001). Those factors are: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *Id.*

In this case, as in *Hanley,* only the second and sixth factors favor abstention; the other factors favor federal jurisdiction. However, neither the fact that the state forum would be slightly more convenient to the parties, nor the existence of concurrent jurisdiction is an "exceptional" circumstance necessary to compel this Court to abandon the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817-18. Moreover, "the balance [is to be] heavily weighted in favor of the exercise of jurisdiction.'

11

*Moses H Cone,* 460 U.S. I, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)." Accordingly, abstention was not warranted.

### C. Dismissal is not appropriate under Rule 12(b)(6).

Contrary to Defendants' argument, the arbitration agreement executed by Fern Workman is valid. Their argument in this regard has been squarely addressed and uniformly rejected by this District.

First, Defendants contend that the arbitration agreement is unenforceable because it does not evidence a transaction involving commerce. The FAA requires enforcement, except upon grounds for revocation of any contract, of "a contract evidencing a transaction involving commerce" for settlement "by arbitration of a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2. United States District Judge Karl Forester's opinion in *GGNSC Vanceburg v. Taulbee,* 2013 WL 4041174 (E.D. Ky. 2013) is on point. He recognized that courts have looked to the acceptance of Medicare as evidence of interstate commerce. He cited *In re Nexion Health at Humble, Inc.,* 173 S.W.3d 67 (Tex.2005), which held that the nursing home's acceptance of Medicare was sufficient for the court to establish the arbitration agreement involved commerce. *Id* at 69. He also noted that the District Court of New Mexico reached the same conclusion. *THI of New Mexico at Hobbs Center, LLC v. Spradlin,* 893 F.Supp.2d 1172, 1184 (D.N.M.2012). Citing numerous similar cases, Judge Forester further started that the purchase of goods from out-of-state vendors by nursing homes was sufficient to prove the requirement of "involving commerce" was met. *Owens v. Coosa Valley Health Care, Inc.,* 890 S0.2d 983, 987-88 (Ala.2004).

In addition, in the present case, the arbitration agreement itself states: "The parties to this Agreement acknowledge and agree that upon execution by Resident, this Agreement becomes

part of the Admission Agreement, and that the Admission Agreement evidences a transaction in interstate commerce governed by the Federal Arbitration Act." [Docket No. 8-2, p. l]. Therefore, the Court finds that Defendant's argument that the transaction does not involve commerce without merit.

The Court now turns to the question of unconscionability, a doctrine that exists as a narrow exception to the rule that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms, *Conseco Finance Servicing Cmp. v. Wilder,* 47 S. W.3d 335, 341 (Ky.App.2001 ), Under Kentucky law, the doctrine of unconscionability is to be "directed against one-sided, oppressive, and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Id (citing Louisville Bear Safety Serv., Inc. v. South Central Bell Tel. Co.,* 571 S.W.2d 438,440 (Ky.App.l978)). Whether a contract is substantively unconscionable (i.e., contains terms that are unreasonable or grossly unfair to one side or another) or procedurally unconscionable (referring to the process by which the contract is reached) is a fact-intensive inquiry. Here, the facts belie the existence of either brand of unconscionability.

The agreement in question contains the following features that support its conscionability: (1) it is a stand-alone agreement; (2) three pages printed in normal font; (3) bold face all capital letter provision noting the agreement is not a condition of admission to the facility; ( 4) no limitation on type or amount of damage claims; (5) no limitation on causes of action; (6) no suspect forum selection; (7) no truncation of the otherwise applicable statute of limitations; (8) the terms are such that a person of ordinary experience and education is likely to understand; and (9) other courts applying Kentucky law have found that arbitration agreements presented as part of the nursing home admission process were not procedurally unconscionable. *See, e.g., Taulbee,*

13

*Abell v. Bardstown Medical Investors, Ltd,* 2011 WL 2471210, * 1-3 (W.D.Ky. June 20, 2011), *Beverly Enterprises, Inc. v. Ping,* 2010 WL 2867914, *6 (Ky.App. July 23, 2010) (reversed on other grounds by *Ping v. Beverly Enterprises, Inc.,* 376 S.W.3d 581 (Ky.2012).

Further, that the arbitration agreement is a "boiler-plate, pre-printed" document does not render it unconscionable, per se. *See Conseco,* 47 S.W.3d at 342-43 (noting that an arbitration clause appearing single-spaced on the back of a pre-printed form did not render it procedurally unconscionable). Defendant has provided the Court no facts to suggest Plaintiffs' representatives failed to provide him an opportunity to ask questions and understand the terms of the agreement. There is simply nothing to suggest that the arbitration agreement is one-sided, oppressive, unfairly surprising or the result of unfair bargaining.

Moreover, the arbitration agreement is not void against public policy. It is well established hat there exists "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi,*- U.S.--, 132 S.Ct. 23,25 (2011). The United States Supreme Court specifically rejected an argument that arbitration agreements can be voided for public policy reasons. *Marmet Health Care Center, Inc. v. Brown,* -U.S.--, 132 S.Ct. 1201, 1203-4, 182 L.Ed.2d 42 (2012). The high Court held: "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* Defendants' attempts to attack the validity of the arbitration agreement are contrary to established law and, as such, fall far short of establishing dismissal pursuant to Rule 12(b)(6).

## D. Defendant Eugene Workman's claim for loss of consortium is subject to the Arbitration Agreement.

The Arbitration Agreement expressly binds Eugene Workman and encompasses his loss of

14

spousal consortium claim. The Agreement encompasses any claim that "is in any way related to [Fern Workman's] stay at the Facility and expressly provides that it "inure[s] to the benefit of . . . any and all person whose claim is derived from or on behalf of the Resident, including his or her . . . spouse . . . ." Arbitration Agreement at p. 1-2. Eugene Workman's loss of consortium claim arises out of his wife's residency at Boyd Nursing and Rehabilitation Center and are, thus, within the bounds of the agreement.

Similarly, in *Kindred Healthcare, Inc. v. Cherolis,* the Kentucky Court of Appeals considered the effect of an arbitration agreement on wrongful death claims, stating:

> [T]he Court in *Ping* drew a distinction between wrongful death claims and personal injury claims. The Court held that, in Kentucky, wrongful death claims are not derivative of personal injury claims. Consequently, the estate may be bound by a valid agreement to arbitrate the personal injury and negligence claims.

*Cherolis,* 2013 WL 5583587 *4 (Ky. Ct. App. Oct. 11, 2013).

The Kentucky Court of Appeals found that the language in the power of attorney authorized the agent to execute the arbitration agreement as to the non-wrongful death claims. Therefore, the court remanded the case to the circuit court for entry of an order granting arbitration of the negligence and personal injury claims involved in the case.

Likewise, in this case, a finding that Eugene Workman's loss of consortium claim is not subject to binding arbitration would have no effect on the arbitrability of all of Defendants' other claims asserted against Plaintiffs in the State Court Action. Thus, under either interpretation of Kentucky law and the FAA, the presence of a loss of consortium does not render the Arbitration Agreement invalid or unenforceable.

### E. This Court may enjoin Defendant from proceeding in state court.

Having found that Defendants must submit their claims to arbitration, the question turns to whether this Court should enjoin the defendant from pursuing her parallel action in state court. The Court finds that such an injunction is necessary, and the defendant is enjoined from proceeding with her state-court action. "Although the FAA requires courts to stay their own proceedings where the issues to be litigated are subject to an agreement to arbitrate, it does not specifically authorize federal courts to stay proceedings pending in state courts." *Great Earth,* 288 F.3d at 893 *(quoting Ultracashmere House, Ltd v. Meyer,* 664 F.2d 1176, 1180 (II th Cir.1981)) (internal citations omitted). For this reason, "the district court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti Injunction Act." *Id.* Pursuant to the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

An injunction in this case "properly falls within the exception for injunctions 'necessary to protect or effectuate [this Court's] judgments.'" *Great Earth,* 288 F.3d at 894. The Court has determined that the parties entered into a binding arbitration agreement covering the scope of Defendant's claims. Having made such a determination and compelling him to submit to arbitration, it is necessary to enjoin Defendant from pursing his claims in any alternative forum, including state court. Otherwise, he would be permitted to circumvent her arbitration agreement and in doing so, circumvent this Court's judgment that he be compelled to arbitrate his claims. Accordingly, the Court will order that Defendant be enjoined from proceeding with his pending state-court action.

16

## IV.

A valid and binding arbitration agreement was executed by Michael Patton. This matter must be referred to arbitration.

Accordingly, **IT IS HEREBY ORDERED:**

(1)  Defendants' Motion to Dismiss [Docket No.6] be **OVERRULED**;

(2)  Plaintiffs' Motion to Enforce Arbitration Agreement and Enjoin Defendants [Docket No. 8] be **SUSTAINED**;

(3)  Defendants shall prosecute all of its claims arising out of Fern Workman's residency at Boyd Nursing & Rehabilitation Center in accordance with the terms of the Arbitration Agreement; and

(4)  This matter is hereby **STAYED** pending any further proceedings to enforce any award of the arbitrator.

This 1st day of March, 2016.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge

17